Sarah E. Carrell et al., Appellees, v. Howard H. Hibner, et al., Appellants.

Gen. No. 10,248.

Opinion filed October 25, 1948.
Rehearing denied May 3, 1949. Released for publication May 4, 1949.

ZEAMORE A. ADER, RAYMOND M. GROSSMAN, both of Chicago, and FRANCIS J. LOUGHRAN of Joliet, for appellants; ZEAMORE A. ADER, of Chicago, of counsel.

OSCAR R. LARAWAY and IRVING SHUTTS, both of Joliet, for appellees.

MR. JUSTICE BRISTOW delivered the opinion of the court.

This is an appeal by defendants, Howard H. Hibner, Herald H. Hibner, John F. Hibner, Carrie E. Mathison, and Francis K. Hibner, from a judgment of the circuit court of Will county, ordering that certain alleged debts be deducted from defendants' distributive share of the proceeds received from a partition sale of property belonging to the estate of Francis A. Hibner, deceased ancestor of both plaintiffs and defendants.

On November 26, 1945, plaintiffs filed a partition suit in which a decree was entered selling certain farm lands in which plaintiffs had been tenants in common with defendants under the terms of the will of Francis A. Hibner, deceased. That decree, however, reserved distribution of the proceeds of the sale until hearings were had before a master in chancery concerning certain debts. After the hearings, the master made his report, to which objections were taken and overruled by the circuit court.

The sole issue confronting this court is a question of law, whether the interests of defendants in the estate of their father, Francis A. Hibner, were encumbered by these alleged debts.

The salient facts are that Francis A. Hibner died on November 20, 1929. Under the terms of his will he bequeathed $1,000 to each of his nine children, and a life estate to his widow in all the rest of his property, real and personal, including the tract of land sold in this proceeding, with the remainder to his nine children in equal parts. At the date of his death some of the children owed him sums of money evidenced by various promissory notes, executed at diverse times, and providing for interest at 6 per cent per annum. The interest on these notes, up to November 28, 1929, was deducted from the individual legacies paid to his heirs.

An agreement was entered between all of the heirs whereby the notes of the defendants, John F. Hibner, Howard H. Hibner, Francis K. Hibner, and Herald H. Hibner, were returned to their makers and new notes in the total amount owed by the individual defendants to their father, were executed to the widow, Sarah Hibner, on November 29, 1929.

On October 5, 1931, in order to pay accrued taxes and other debts owed by the estate, the widow and children joined in a warranty deed conveying their in-

terest in the estate to Emma A. Hibner, so that she could present a title with which to borrow money on the land. Some months later the said Emma A. Hibner executed a declaration of trust, signed by her alone, in which she declared that she held title to the property for the benefit of her stepmother, Sarah E. Hibner, for life, and for the other children subject to this life estate and to certain indebtedness owed to the estate. It was further provided that after the death of the mother, Emma Hibner would sell the real estate and distribute the proceeds after the payment of expenses and after deducting these alleged debts owed by defendants, and by some of the other children, to the estate of Francis Hibner. The amounts specified as indebtedness corresponded to the sums represented by the notes held by the widow, which in turn consisted of the total amount each child owed to Francis Hibner.

Plaintiffs contend that this provision of the trust was orally agreed to by all the heirs. Defendants, however, insist that they conveyed their interest in the property for the sole purpose of enabling her to present sufficient title in order to borrow money to pay the taxes and debts of the estate, and did not, orally or by any other means, agree to charge their interest in their father's estate with any indebtedness.

In 1941, the heirs authorized Emma Hibner, as trustee, to make another loan on the premises in order to repay the original one. This signed authorization contained a provision stating that the rights and interests of the parties in the premises, as set forth in the declaration of trust, are only affected to the extent of making the trust deed to be executed by Emma Hibner a prior lien on the premises. The defendants, farmers of limited educational training, testified that they hurriedly signed this paper late in the evening at the insistence of their brother-in-law, who was making the

new loan, and were told that it was necessary in order to pay the original loan.

On the basis of the foregoing facts, the master made certain findings which were adopted by the court. In substance it was found that the defendants were indebted either to the estate of Francis A. Hibner, or to Sarah Hibner, in the amount of the promissory notes made to Sarah Hibner after the death of Francis Hibner, together with interest thereon from November 28, 1929, at the rate of 5 per cent per annum; that the declaration of trust was in accordance with the oral agreement of the parties; that the indebtednesses were a valid consideration for the agreement; that the debts were a charge on the land; that neither the statute of frauds nor the statute of limitations were a defense. The court, however, modified the master's report in that the costs were divided between the parties.

On this appeal defendants contend that the court erred in finding that the debts were a charge on their interest in the estate on the ground that such a provision was barred by the statute of frauds, and that the debts, moreover, were long since barred by the statute of limitations; and that the court erred in assessing interest from November 28, 1929.

Plaintiffs deny that the statute of frauds barred the debts from being charged against defendants' beneficial interests under the declaration of trust, and maintain that the trust agreement was ratified by the defendants and that the debts were not barred by the statute of limitations. Plaintiffs insist further, that, under the doctrine that he who seeks equity must do equity, defendants cannot claim that their debts should not be deducted, and finally, that the interest was correctly assessed.

From the evidence hereinbefore reviewed, it is apparent that the original notes executed by defendants to Francis A. Hibner prior to 1929, representing in-

debtedness for diverse sums of money borrowed from the father, were unsecured notes. By the terms of his will, Francis A. Hibner did not charge the inheritance of the children with the money they owed him, but granted the remainder of his estate in equal shares to each of his nine children.

It is further evident that by agreement entered shortly after the death of Francis A. Hibner these notes were returned to the defendant makers, and new notes in the full amount owed to the father were executed to Sarah E. Hibner, the mother. These new notes were also unsecured obligations, and, upon delivery, became the absolute property of Sarah Hibner to be dealt with as she saw fit, and were in no way deemed part of the estate of Francis Hibner to be preserved for the remaindermen. Some interest was paid to Sarah Hibner in money and moneys worth.

At the date of the trust declaration by Emma Hibner, in 1932, while Sarah Hibner was living, the defendants apparently owed Sarah Hibner, rather than the estate, the amount of the notes. Clearly they could not be deemed to owe the indebtedness to both Sarah Hibner and the estate of Francis A. Hibner, and the only evidence of indebtedness introduced in the record was the promissory notes to Sarah Hibner. The recital in the trust declaration that defendants owed the estate of Francis Hibner was, therefore, contrary to the existing state of facts.

However, even if the indebtedness was regarded as owing to the estate, and the designation of Sarah Hibner as the payee on the new notes was merely designed to indicate a person to whom the indebtedness could be paid, the legal conclusion would be the same as will appear hereinafter.

The declaration of trust, according to its own terms, and as corroborated by the oral testimony of the par-

ties, was executed by Emma Hibner pursuant to an agreement between the parties whereby the widow and the other children conveyed by warranty deed their interest in the land to Emma Hibner so that she could present title to secure a loan of $3,500 on the property in order to pay accrued taxes and debts of the estate. There was no other consideration for the execution of the deed, and no intention to part with title for any other purpose.

Emma Hibner admitted in the trust declaration that she held the property in trust for the benefit of the widow and the other children for the avowed purpose, but further declared that the undivided 1/9 interest of the children was burdened with indebtednesses in the following sums: Howard H. Hibner for $1,775.71, Francis K. Hibner for $2,128.25, Nancy J. Hibner (Nancy Sweedler) for $550, Sarah E. Hibner (now Sarah Srygler) for $450, Herald H. Hibner for $1,775.71. It was also provided that after the death of the life tenant, Emma Hibner would sell the property, and after the payment of the mortgage and expenses, the balance would be divided equally in nine parts with deductions made for the amounts specified as owed by the children to the estate of Francis A. Hibner, plus accrued interest.

The provision to deduct the indebtedness from defendants' interest in the estate of Francis A. Hibner effected an interest in land, and sought to convert an unsecured obligation into a mortgage on defendants' interests. It was therefore, within the terms of the statute of frauds (ch. 59, par. 2, Ill. Rev. Stat. 1947 [Jones Ill. Stats. Ann. 55.02]) which provides: ''No action shall be brought to charge any person upon any contract for the sale of lands, tenements or hereditaments or any interest in or concerning them, for a longer term than one year, unless such contract or some memorandum or note thereof shall be in writing, and signed by the party to be charged therewith, or

some other person thereunto by him lawfully authorized in writing, signed by such party. . . ."

The provision in the trust declaration encumbering defendants' interests should properly have been signed by them as the parties to be charged. For, even if defendants had orally agreed to such a provision, as plaintiffs contend, and which defendants deny, an oral agreement to charge land with a debt is void and contrary to the statute of frauds. (*Walker v. Carleton*, 97 Ill. 582.)

The declaration of trust, however, was signed only by Emma Hibner, and inasmuch as she had title only for the admitted purpose of procuring a loan on the property and there was no other consideration for the conveyance of defendants' interests to her, she had a duty to declare the trust. However, since defendants did not sign the trust declaration or any other instrument authorizing her to charge their interests in the real estate with any alleged debts, she did not have the right to limit the interests of the beneficiaries and encumber them with the alleged obligations, whether they were owed to Sarah Hibner or to the estate of Francis A. Hibner.

Moreover, it is not clear from the trust declaration just what indebtednesses were involved since there was no reference therein to the notes executed to Sarah Hibner which were the only obligations owed by the defendants. Furthermore, the indebtedness was designated as a fixed sum, with no provision for its reduction if payments were made to Sarah Hibner on the notes.

Irrespective of these vagaries, it is apparent that this provision of the trust declaration, which was not signed by the defendants as the parties to be charged, was within the provision of the statute of frauds and cannot be enforced to encumber defendants' interests in the proceeds of the estate with any alleged indebtedness.

Plaintiffs insist, however, that defendants cannot rely upon the defense of the statute of frauds, and in support thereof cite *Myers v. Myers,* 167 Ill. 52. The facts of that case bear little similarity to the case at bar, but the court enunciated therein the general proposition of law that where the parties relied for their title upon an answer which waived the statute of frauds, and admitted a trust that rested largely in parol, they were estopped from asserting the defense of the statute of frauds as against each other.

In the instant case defendants have not waived the statute of frauds, nor have they adopted the provision which offends the statute as the appellants did in the *Myers* case, where they adopted the answer which by its terms required recourse to parol evidence. On the contrary, defendants have unequivocally denied the veracity of the provision encumbering their property interests with alleged debts, and insisted that since it was not signed by them as a party to be charged, it violated the statute of frauds. They should not, therefore, be estopped from asserting the defense of the statute, and the *Myers* case is not determinative of their rights. Nor are there any other grounds for invoking an estoppel against the defendants herein.

Plaintiffs argue, however, that the defense of the statute of frauds cannot be asserted for the further reason that even if the declaration of trust was not signed by defendants, they ratified it in 1941 by signing the paper authorizing Emma Hibner to make a new loan of $4,700 on the land in order to pay certain debts and expenses, and that this paper constituted a sufficient memorandum to satisfy the statute.

This authorization recited that the rights and interests of the parties as set forth in the declaration of trust were to be affected thereby to the extent of making the new trust deed to be executed by Emma Hibner for the new loan a prior lien. Clearly, this

statement did not specify what the rights and interests of the parties were in the original declaration of trust, nor indicate that defendants approved them. It merely stated that whatever those rights were, they would become subordinate to the trust deed for the new loan. From the evidence in the record, moreover, it is clear that in signing this authorization defendants had no intention to ratify or approve the encumbrance of their interests as provided in an instrument executed some nine years previously. Nor can their authorization for the new loan be given such an interpretation from its own terms as a matter of law. Therefore plaintiffs' contention that the declaration of trust was ratified by defendants cannot be maintained.

Inasmuch as the statute of frauds barred the provision of the declaration of trust encumbering defendants' property interests with the alleged debts, and since these debts were merely evidenced by unsecured notes, bearing the dates of 1929 and 1931, on which no interest was paid after 1931, they are barred by the 10-year statute of limitations. (Ch. 83, par. 17, Ill. Rev. Stat. 1947 [Jones Ill. Stat. 107.276].) This conclusion must follow irrespective of whether the indebtednesses are regarded as owing to the estate of Francis A. Hibner or to Sarah Hibner.

Furthermore, we cannot sustain plaintiffs' contention that the doctrine of "He who seeks equity must do equity" requires as a matter of law the relinquishment of valid legal defenses, such as defendants presented herein.

Although the master recommended that the debts be deducted from defendants' distributive share of the proceeds from the sale of the property of their ancestor, this determination is predicated upon issues of law on which this court must make its own independent determinations. It is our considered judgment that the circuit court, in adopting the master's report, erred in ordering that the alleged debts be de-

ducted from defendants' shares in the proceeds of the partition sale, and the judgment ordering the distribution accordingly should properly be reversed.

*Judgment reversed.*